### SCHMIDT & ZIEGLER, Limited, v. NEW ORLEANS PUBLIC SERVICE, Inc.
### No. 13850.

Court of Appeal of Louisiana. Orleans.

Nov. 30, 1931.

Ivy G. Kittredge, of New Orleans, for appellant.

---

*Rehearing denied December 14, 1931. Certiorari denied by Supreme Court February 1, 1932.

872

Milner & Porteous and Wm. A. Porteous, Jr., all of New Orleans, for appellee.

HIGGINS, J.

Plaintiff seeks to be recompensed for damages to its truck alleged to have resulted from a collision with the defendant's street car at the intersection of St. Claude avenue and Poland street, this city, on September 24, 1929, about 1 o'clock p. m. The petition alleges that the truck had stopped on the street car tracks in the intersection for about one minute in plain and full view of the motorman; that the car struck the truck on its left side, causing considerable damage due to the gross negligence of the motorman in not seeing the truck on the tracks; and, in the alternative, that the motorman had the last clear chance of avoiding the accident.

Respondent denies that the motorman was guilty of any negligence, and avers that the car was being operated carefully and at a moderate rate of speed and that the truck was driven suddenly, and without warning, across the tracks at a time when the street car was no near that it was impossible for the motorman to stop or avoid the collision, although he made every effort to do so.

There was judgment in favor of plaintiff for $515.50, disallowing its claim of $50 for loss of the use of its truck. Defendant has appealed and plaintiff has not answered the appeal.

The record shows that St. Claude avenue is a paved boulevard with a neutral ground in the center on which are located doubled street car tracks, with paved roadways on each side and runs from Esplanade avenue towards the Industrial Canal. Poland street also has a neutral ground in the center with paved thoroughfares on each side. These two streets intersect at approximately right angles.

The plaintiff's chauffeur was driving its three-ton White truck on the lower roadway of Poland street in the direction of the lake. He was en route to deliver groceries to the New Orleans Public Service, Inc., at the Poland Street Barn, which is located on the upper side of Poland street and on the riverside of St. Claude avenue. Upon reaching St. Claude avenue he crossed the riverside roadway, the neutral ground and street car tracks, turned to his left towards Canal street on St. Claude avenue for a distance of forty-four feet, in order to come around the end of the neutral ground, and then again turned to his left for the purpose of crossing the neutral ground and the riverside roadway of St. Claude avenue so as to go in the direction of the river on the upper side of Poland street in order to reach his destination. The street car, which was of a late type, and in good mechanical order, was going towards Canal street on St. Claude avenue on the street car tracks located towards the lakeside of the neutral ground. The Industrial Canal, over which there is a bridge which is opened and closed to allow boats to pass, is about two and one-half blocks from Poland street, and the approach to the bridge is on an incline that starts at the intersection of Poland street. The front of the street car struck the left side of the truck just back of the place where the driver's seat is located, shoved it some distance, and caused considerable damage to the truck and also to the front vestibule of the street car.

The sole issue in the case is one of fact, namely, was the truck on the street car tracks for a sufficiently long period of time so that the motorman could have seen it or should have seen it in time to have stopped the street car, or did the truck turn to its left so suddenly and without warning that the motorman had no opportunity of stopping the car before reaching the truck.

Plaintiff, to prove its theory of the collision, produced three eyewitnesses to the accident, the truck driver and two disinterested witnesses, one of whom was standing on the neutral ground ten or fifteen feet from where the accident occurred and the other was standing on the river sidewalk of St. Claude avenue about sixty or seventy feet from the point of collision. Their testimony is to the effect that the truck crossed the lower side of the intersection and, when attempting to cross the other side of the neutral ground, was forced to come to a stop on the lakeside car tracks on St. Claude avenue because of traffic and an automobile in front of the truck; that the truck had been stopped on the tracks for ten or fifteen seconds and there was nothing to intercept the motorman's view as he approached; that at the time the truck stopped on the tracks the street car was fully one-half block away from the intersection; that the street car came down the incline which forms the approach to the bridge at a fast rate of speed, without sounding its gong or slowing its speed and ran into the truck; that just before the collision the motorman left his post of duty and ran into the street car; and that from the force of the impact the truck was pushed or knocked some twelve or fifteen feet.

Defendant, to prove its defense, offered nine eyewitnesses, all of whom were employed by the railway company, except two, one a passenger on the street car and the other a city policeman who was on duty at the Poland street barn. The motorman and conductor were at their respective posts in the street car, the passenger was in the street car, the policeman was over in the direction of the barn, and the other five witnesses were standing on a paved portion of the neutral ground where passengers board and alight from the street cars going towards Canal street on St. Claude avenue. Their version of the ac-

cident is substantially that when the street car proceeded down the incline it slackened its speed before crossing the lower side of Poland street, and also for the purpose of stopping where the passengers are received and discharged at Poland street, and where another motorman and conductor were waiting to relieve the crew on the car; that as the street car neared the truck, which, at that time, was headed towards Canal street on St. Claude avenue, the truck driver, without slowing up or holding out his hand or giving any signal, suddenly turned to his left in the direction of the river; that the motorman began to rapidly sound the gong and put on the brakes, but before the car could be stopped it collided with the truck, striking it on the left side near the driver's seat, pushing it some four or five feet; that the front vestibule of the car was badly crushed and that the truck was also damaged.

While the witnesses for plaintiff state that the street car was coming down the incline at a rapid rate of speed, they are in accord with defendant's witnesses that the street car was being operated between ten and fifteen miles per hour as it crossed the lower side of Poland street. The point on which the testimony of the witnesses is sharply in conflict and hopelessly irreconcilable is whether the truck had stopped on the track for ten or fifteen seconds just before it was struck, or whether it suddenly turned, without warning, from the street to the left on the tracks, so that the motorman did not have an opportunity to stop before striking it. If the version of the witnesses of plaintiff be accepted, then the plaintiff has made out a clear case because it convicts the motorman, not only of ordinary negligence and carelessness, but also of the most culpable and criminal kind of negligence and a wanton disregard of life, limb, and property and a gross disregard for the safety of himself and others, including the passengers in the car. But, if we accept the testimony of defendant's witnesses as true, a complete defense has been established.

It would appear to us that the preponderance of the evidence is in favor of defendant's theory of how the accident occurred, both by virtue of the greater number of witnesses and also because of the reasonable, conservative, and plausible story that they told. Their narration of how the accident happened is in keeping with ordinary human experience with reference to such occurrences. On the other hand, the story told by plaintiff's witnesses is most extraordinary and not convincing. It is very difficult for us to believe that a motorman, who has charge of a street car with the attending responsibility for the safety of passengers for whom the carrier is held to a high degree of care, would so recklessly operate his car so as to not look at all while crossing a dangerous street intersection, failing to see a large three-ton truck directly in his path, neglect to sound his gong as warning of the approach of the car, and not even attempt to slacken the speed of the car, and before the collision, completely abandon his post and permit the street car to crash head on into the truck.

In the case of Tourmillion v. N. O. Public Service, Inc., 3 La. App. 297, the court said:

"The reluctance of an appellate court to disturb the finding of fact by a trial court must yield to the necessity of reversing such findings when they appear to be clearly erroneous. One who attempts to drive an automobile across a street railway track in front of an approaching street car, when the latter could have been easily seen and heard, is guilty of negligence and is not entitled to damages to the car arising from the collision."

We conclude that the sole and proximate cause of the accident was negligence of the truck driver in suddenly driving the truck in front of the street car.

Counsel for plaintiff strenuously argues that all of the witnesses for defendant, except the passenger on the car, were interested parties, being employees of the railway company or having relatives working for it, and that this should be taken into consideration in weighing their testimony. This is true, but we find that their statements are conservative and reasonable, whereas the testimony of plaintiff's witnesses as to how the accident happened is most improbable and unreasonable.

As to the question of the motorman having the last clear chance of avoiding the accident, we are convinced that at the time the truck turned off of the lakeside roadway of St. Claude avenue onto the street car tracks, the street car was some twelve or fifteen feet from it and running at the rate of ten to fifteen miles per hour, which did not give the motorman a sufficient opportunity to stop, since the driver of the truck did not give any signal or warning of his intention to turn to his left.

We have reached the conclusion that the judgment of the trial court is manifestly erroneous, and for the reasons assigned it is annulled, avoided, and reversed, and it is now ordered that there be judgment in favor of defendant, New Orleans Public Service, Inc., and against plaintiff, Schmidt & Ziegler, Limited, dismissing the suit at its cost.

Reversed.